United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 12, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-31199 |
| ANADRILL DIRECTIONAL SERVICES INC., | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |
| | § | |
| RONALD J SOMMERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 25-3041 |
| | § | |
| RDM CAPITAL FUNDING, LLC DBA FINTAP, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Ronald J. Sommers, the chapter 7 Trustee, brought a motion for summary judgment against RDM Capital Funding, LLC DBA Fintap, to recover an alleged fraudulent transfer, arguing that RDM Capital Funding, LLC DBA Fintap, gave Anadrill Directional Services, Inc., a loan that carried a usurious interest rate.[1] The chapter 7 Trustee further argues the loan is void because RDM Capital Funding, LLC DBA Fintap, did not give reasonably equivalent value to Anadrill Directional Services in exchange for Anadrill Directional Services' loan payments.[2] But RDM Capital Funding, LLC DBA Fintap, also brought a motion for summary judgment, arguing that the agreement was for a sale of future receivables, not a usurious loan.[3]

---

[1] ECF No. 14, at 7-8.
[2] ECF No. 14, at 7-8.
[3] ECF No. 17, at 6-7.

This Court denies the chapter 7 Trustee's motion for summary judgment as to Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C. § 548(a)(1)(B); Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B); Count 3 – Recovery of Avoided Transfers under § 550(a)(1); and as to the chapter 7 Trustee's request for pre-judgment interest and post-judgment interest, because based on the summary judgment evidence before the Court, this Court cannot conclude that RDM Capital Funding, LLC DBA Fintap, failed to make a showing sufficient to establish the existence of an element essential to its defense, which is that the Agreement is a sale of future receivables and provides reasonably equivalent value for the payments Anadrill made to RDM.

Furthermore, this Court denies RDM Capital Funding, LLC DBA Fintap's motion for summary judgment as to Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C. § 548(a)(1)(B); Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B); and Count 3 – Recovery of Avoided Transfers under § 550(a)(1) because based on the summary judgment evidence before the Court, this Court cannot conclude that the chapter 7 Trustee failed to make a showing sufficient to establish the existence of an element essential to the chapter 7 Trustee's Claims.

**A. Background**

1. For the purposes of this Memorandum Opinion and, to the extent not inconsistent herewith, this Court adopts and incorporates by reference each of the Background Facts in this Court's January 28, 2026, Memorandum Opinion in Case No. 25-3039[4] and its February 4, 2026, Memorandum Opinion in Case No. 25-3036.[5]

2. On July 5, 2022, Anadrill Directional Services, Inc., ("*Anadrill*") and RDM Capital Funding, LLC DBA Fintap ("*RDM*") entered into a "Master Receivables Services Agreement" (the "*Agreement*").[6] Pursuant to the Agreement, Anadrill sold $792,000 of its

---

[4] *Sommers v. Glob. Merch. Cash, Inc.*, Case No. 25-3039, ECF No. 27 (Bankr. S.D. Tex. Jan. 28, 2026).
[5] *Sommers v. Capybara Cap., LLC*, Case No. 25-3036, ECF No. 45 (Bankr. S.D. Tex. Feb. 4, 2026).
[6] ECF No. 1, at 3.

future receipts to RDM for $600,000, less an origination fee of $18,000.[7] On July 6, 2022, RDM wired $582,000 to Anadrill.[8]

3. According to the Trustee, the repayment of $792,000.00 through payments of $16,500.00 results in 48 payments.[9] Forty-eight weeks equals 336 calendar days, or approximately 0.92055 years.[10] A simple interest calculation yields an annual interest rate on the Agreement of approximately 39.20%.[11]

4. Beginning on March 28, 2022, Anadrill made 26 payments to RDM in the amount of $16,500 each week, for a total of $429,000 (the "*Transfers*").[12]

5. The Agreement provides that it is governed by New York law.[13]

6. On April 3, 2023, Anadrill filed a voluntary petition under chapter 7 of the Bankruptcy Code.[14]

7. On February 11, 2025, Ronald J. Sommers, the chapter 7 Trustee ("*Trustee*") filed the "Complaint" (the "*Complaint*").[15]

8. On October 1, 2025, the Trustee filed "Plaintiff's Motion for Summary Judgment and Memorandum of Law" ("*Plaintiff's Motion for Summary Judgment*").[16]

9. On October 1, 2025, RDM filed the "Defendant RDM Capital Funding, LLC's Motion for Summary Judgment" ("*Defendant's Motion for Summary Judgment*").[17]

10. On October 15, 2025, RDM filed the "Defendant RDM Capital Funding, LLC's Response to Plaintiff's Motion for Summary Judgment and Memorandum of Law" ("*Defendant's Response*").[18]

11. On October 22, 2025, the Trustee filed the "Response in Opposition to Defendant's Motion for Summary Judgment" ("*Plaintiff's Response*").[19]

---

[7] ECF No. 1, at 3.
[8] ECF No. 1, at 3.
[9] ECF No. 1, at 3.
[10] ECF No. 1, at 3.
[11] ECF No. 1, at 3.
[12] ECF No. 1, at 4.
[13] ECF No. 1, at 3.
[14] Bankr. ECF No. 1. "Bankr. ECF" refers to docket entries made in the Debtor's bankruptcy case, No. 23-31199. Entries made in Plaintiff's Case No. 25-03041 shall take the format of ECF No.__.
[15] ECF No. 1.
[16] ECF No. 14.
[17] ECF No. 17.
[18] ECF No. 18.
[19] ECF No. 19.

12. On November 24, 2025, the Court entered its "Order Continuing Certain Dates in Scheduling Order."[20]

## I. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." An adversary proceeding falls within the Court's "related to" jurisdiction if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[21] The District Court for the Southern District of Texas has referred all such matters to the bankruptcy courts by standing order.[22]

This Court also determines that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(H), as it concerns the avoidance and recovery of allegedly fraudulent transfers. Even if this matter were deemed non-core, the Court finds that denying a motion for summary judgment is interlocutory in nature and therefore may be entered regardless of final adjudicatory authority.[23]

Venue is proper pursuant to 28 U.S.C. § 1409(a), which provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Because the underlying bankruptcy case is pending in this district, venue is proper.

## II. ANALYSIS

In the Complaint, the Trustee brings the following three causes of action (collectively, the "*Counts*"), to wit: Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C.

---

[20] ECF No. 24.
[21] *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).
[22] Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[23] *See In re Fauser*, No. 10-31501, 2015 WL 877451, at *2 (Bankr. S.D. Tex. Feb. 26, 2015).

§ 548(a)(1)(B) as to certain agreements; Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B) as to certain payments made under those agreements; and Count 3 – Recovery of Avoided Transfers under § 550(a)(1), (the "*Claims*").[24] The Trustee brought a Motion for Summary Judgment requesting summary judgment on all three Counts, as well as pre-judgment interest and post-judgment interest,[25] and RDM also brought a Motion for Summary Judgment requesting summary judgment on all three Counts.[26]

### A. Standard of Review for Motions for Summary Judgment

Federal Rule of Civil Procedure 56 ("*Rule*") permits a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[27] Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings. Rule 56 states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[29] Courts employing this standard of review must determine "not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon evidence before the court."[30] To prevail on summary judgment, the moving party has the burden of showing the absence of a genuine issue

---

[24] *See generally* ECF No. 1, at 5-9.
[25] *See generally* ECF No. 14.
[26] *See generally* ECF No. 17.
[27] Fed. R. Civ. P. 56(a).
[28] *Id.*
[29] Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[30] *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

of material fact and the appropriateness of judgment as a matter of law.[31] A material fact is one "that might affect the outcome of the suit under the governing law."[32] A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving parties.[33]

Rule 56 creates a shifting burden. Once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence."[34] If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.[35] When there is no genuine issue for trial, the Court should grant summary judgment.[36] In determining whether summary judgment is appropriate, a court is not to weigh evidence, assess its probative value, or resolve factual disputes,[37] but the facts must be reviewed with all "justifiable inferences" drawn in non-movants' favor.[38] Nevertheless, factual controversies will be resolved in non-movants' favor "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."[39] If, however, the record could not lead a rational trier of fact to find for non-movants, summary judgment is appropriate.[40] While the Court may consider other materials in the record, it need only consider those actually cited.[41] Where the facts are undisputed and only questions of law exist, a court must apply the appropriate law to the facts to determine whether the moving party is entitled to judgment as a matter of law.[42]

---

[31] *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).
[32] *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).
[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[34] *Ferguson v. Nat. Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted).
[35] *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).
[36] *Id.*
[37] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).
[38] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998).
[39] *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir.1996).
[40] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (1986).
[41] *Id.* (citing Fed. R. Civ. P. 56(c)(3)).
[42] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991) ("Summary judgment is appropriate where the only issue before the court is pure question of law."); *see also Barnes v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS

B.  **Constitutional Standing**

As a threshold matter, the Court must decide whether the Trustee has constitutional standing to bring an action to avoid a fraudulent obligation, avoid a fraudulent transfer, and recover the proceeds of an avoidance action. To have standing in bankruptcy court, a plaintiff must satisfy Article III constitutional standing requirements.[43] Because federal courts are courts of limited jurisdiction, a case must be dismissed under Rule 12(b)(1) when the court lacks the constitutional or statutory authority to adjudicate it.[44] Rule 12(b)(1), made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7012, allows dismissal of a claim for lack of subject-matter jurisdiction.[45] The party asserting jurisdiction bears the burden of proving by a preponderance of the evidence that subject-matter jurisdiction exists.[46] Furthermore, "[a] motion to dismiss for lack of subject matter jurisdiction may be brought for failure to allege injury sufficient for Article III standing at any time."[47] But a motion to dismiss under Rule 12(b)(1) should only be granted if it appears certain that the plaintiff cannot prove any set of facts entitling them to relief.[48]

Pursuant to Article III of the United States Constitution, a federal court's jurisdiction over a case depends on the existence of a "case or controversy."[49] A "case or controversy" exists only if the plaintiff has constitutional standing to bring the claim.[50] To have constitutional standing, the

---

51218, 2014 WL 1457696, at *1 (E.D. La. Apr. 14, 2014) ("Because the facts are undisputed and this motion presents only a question of law, resolution on summary judgment is appropriate.").
[43] *In re O'Gorman*, 115 F.4th 1047, 1054 (9th Cir. 2024) (citing *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012); *see also In re Wood Treaters, LLC*, 491 B.R. 591, 597 (Bankr. M.D. Fla. 2013).
[44] *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[45] Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012.
[46] *Ramming*, 281 F.3d at 161.
[47] Fed. R. Civ. P. 12(H)(3); *see also HSBC Bank USA, NA v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018) ("Standing is a component of subject matter jurisdiction").
[48] *Ramming*, 281 F.3d at 161.
[49] U.S. Const. art. III, § 2, cl. 1.
[50] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

plaintiff must, as the United States Supreme Court described in *Spokeo, Inc. v. Robins*, "clearly allege facts demonstrating" that the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[51] But if the plaintiff has failed to plead sufficient facts to establish each element, dismissal is appropriate.[52] Furthermore, to demonstrate constitutional standing to bring an avoidance action, the plaintiff must "prov[e] the estate suffered an injury as a result of the transfers."[53] One way to establish an injury to the estate is to show that transfers to the defendant depleted estate assets.[54]

Here, RDM brings a motion for summary judgment arguing that the Trustee lacks constitutional standing to bring avoidance actions.[55] RDM claims that Anadrill profited from the Agreement because Anadrill received more money from RDM than Anadrill paid back to RDM.[56] Thus, RDM argues, Anadrill has no injury, and therefore the Trustee does not have constitutional standing to bring an avoidance action.[57]

In response, the Trustee argues that Anadrill and its creditors were injured because the Agreement is for an allegedly usurious loan, and so the Trustee is seeking to avoid the incurrence of the Agreement itself under 11 U.S.C. § 548(a)(1)(B).[58] Applying the constitutional standing factors that the United States Supreme Court enunciated in *Spokeo, Inc. v. Robins*: (1) the Trustee's Counts are based on a plausible concrete and particularized injury because the Agreement provides

---

[51] *Id.*
[52] *Id.*
[53] *In re Wood Treaters, LLC*, 491 B.R. 591, 597 (Bankr. M.D. Fla. 2013); *In re Fontainebleau L.V. Cont. Litig.*, 716 F. Supp. 2d 1237, 1247 (S.D. Fla. 2010) ("Standing is a threshold jurisdictional question that must be addressed prior to and independent of the merits of a party's claim.").
[54] *In re O'Gorman*, 115 10 F.4th at 1054; *In re Wood Treaters, LLC*, 491 B.R. at 597 ("[T]he injury to the estate must be established as to each transfer alleged in the Complaint.").
[55] ECF No. 17, at 4-6.
[56] ECF No. 17, at 4-6.
[57] ECF No. 17, at 4-6.
[58] ECF No. 19, at 1-2.

that Anadrill must pay an allegedly fraudulent interest rate; (2) Anadrill's injury is plausibly traceable to the challenged conduct because RDM formed the Agreement with Anadrill, and according to the Agreement Anadrill must pay an allegedly fraudulent interest rate; and (3) Anadrill's injury can plausibly be redressed if the Court determines that the loans are usurious and the Agreement is void.[59] Thus, if the Agreement is for a usurious loan, it is plausible that the Agreement does not bestow fair value on Anadrill and is harmful to the estate. But as explained *infra*,[60] there remains a genuine dispute of material fact as to whether the Agreement is for a usurious loan. Thus, based on the summary judgment evidence before the Court, this Court cannot conclude that the Trustee failed to make a showing sufficient to establish the existence of an element essential to establish it has the constitutional standing to bring the instant avoidance action.

## C. Choice of Law

As another threshold matter, the Court must determine whether New York law governs the dispute, as per the Agreement's choice of law clause.[61] Bankruptcy courts faced with a choice of law issue must decide whether to apply federal or state law.[62] The question depends on whether state law or federal bankruptcy law was invoked by the cause of action.[63]

Here, the Trustee brings usury claims which arise from state law.[64] Furthermore, the Trustee alleges that the contract is governed by New York law, because there is a choice of law clause in the Agreement stating that the parties agreed that New York law would apply.[65] RDM

---

[59] *In re Shoot the Moon, LLC*, 635 B.R. 797, 810 (Bankr. D. Mont. 2021); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).
[60] *See infra*, II.4.
[61] *In re Cyrus II P'ship*, 413 B.R. 609, 613 (Bankr. S.D. Tex. 2008).
[62] *In re iHeartMedia, Inc.*, 597 B.R. 339, 350 (Bankr. S.D. Tex. 2019).
[63] *Id.*; *see also Crist v. Crist (In re Crist)*, 632 F.2d 1226, 1229 (5th Cir. 1980) ("But the Fifth Circuit has held, '[w]here disposition of a federal question requires reference to state law, federal courts are not bound by a forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy.'").
[64] *See generally* ECF No. 1.
[65] ECF No. 1, at 3.

does not appear to dispute that New York law applies in its pleadings.[66] Therefore, the Court does not need to engage in further choice of law analysis at this stage,[67] and the Court will apply New York law for purposes of the Motions for Summary Judgment.

### D. Whether the Agreement Was for a Loan or Sale of Future Receivables

Another threshold matter is the determination of whether the Agreement is a loan or sale of future receivables, because all of the Trustee's Claims hinge on whether the Agreement was a sale or a high-interest loan.[68] Under New York law, courts look to the substance, not merely the form, of an agreement to determine whether it constitutes a loan subject to usury laws.[69] Agreements styled as "merchant cash advances" or "receivables purchases" may actually be loans if they impose an absolute obligation to repay and shift virtually all risk to the borrower, or "seller" of the future receivables.[70] This is because in a true sale of future receivables, the lender, or "buyer," bears the risk that the purchased asset will be uncollectible.[71]

When determining whether the right to repayment is absolute, New York courts weigh three factors: "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy."[72] In addition, courts may consider whether there are default provisions entitling the

---

[66] *See generally* ECF No. 17, 18.
[67] *See In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287, 2022 WL 1589190, at *16 (Bankr. S.D. Tex. May 19, 2022).
[68] *See generally* ECF No. 14, 17.
[69] *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 334 (2021); *see also In re GWG Holdings, Inc.*, No. 22-90032, 2023 WL 6449208, at *4 (Bankr. S.D. Tex. Oct. 2, 2023).
[70] *AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 77 (E.D.N.Y. 2022) ("A loan entails an absolute contractual entitlement for repayment and allocates risk to the borrower; conversely, a sale affords only a conditional right for performance and allocates risk to the buyer.").
[71] *Id.*; *see e.g.*, *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 414 (5th Cir. 2003); *see also Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 U.S. App. LEXIS 14241, at *3 (2d Cir. 2023) ("(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy.").
[72] *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 122 N.Y.S. 3d 309, 312 (2d Dept. 2020).

lender to immediate repayment, and whether the agreement allows collection on a personal guaranty in the event of default or bankruptcy.[73]

Here, the Trustee points to the tripartite test used by New York courts, arguing that although the Agreement contains a reconciliation provision, if Anadrill defaulted, it would then owe 100% of its revenue to RDM.[74] Thus, the Trustee argues, the reconciliation provision here does not allow for a change in the total amount Anadrill owes RDM, just the amount Anadrill owes in any given week.[75] This indicates that there is an absolute obligation to repay, which, if true, would mean that the Agreement is a loan and not a sale of future receivables.[76] The Trustee further argues that RDM also made reconciliation contingent "upon any information [RDM] requests," which shows that RDM has control over whether reconciliation will be allowed.[77] But RDM contends there "was no limit on Anadrill's right to reconcile."[78]

The Trustee also argues that the Agreement has a finite term because "[r]epaying a set dollar amount with defined weekly payments . . . results in a definite and known term. Just like a loan, the Agreement had a defined period for repayment."[79] The Trustee argues this indicates that Anadrill has an absolute obligation to pay.[80] But RDM argues that there was no agreed finite term.[81] RDM further argues that the Agreement does not require paying a set dollar amount per week, but rather a *percentage* of the total amount owed.[82]

---

[73] *Id.* at 666.
[74] ECF No. 14, at 11-12.
[75] ECF No. 14, at 11-12; *see also In re Williams Land Clearing, Grading, & Timber Logger, LLC*, Nos. 22-02094-5-PWM, 23-00024-5-PWM, 2025 Bankr. LEXIS 1201, at *25 (Bankr. E.D.N.C. May 16, 2025) (citing *AKF, Inc. v. Haven Transp. Bus. Sols., Inc.*, No. 1:22-cv-269 (MAD/CFH), 2024 WL 2941746, at *7 (N.D.N.Y. June 11, 2024)).
[76] *LG Funding,* LLC, 122 N.Y.S. 3d at 312.
[77] ECF No. 14, at 12.
[78] ECF No. 18, at 7.
[79] ECF No. 14, at 12 (citing *AKF, Inc.*, 632 F. Supp. 3d at 78).
[80] *See* ECF No. 14, at 12.
[81] ECF No. 18, at 6.
[82] ECF No. 17, at 7.

Furthermore, the Trustee argues that although the Agreement contains no provision declaring that bankruptcy would be considered a default, a bankruptcy would prevent RDM from accessing Anadrill's bank account, and the Agreement states that there is a default if Anadrill prevents RDM from accessing Anadrill's bank account.[83] But RDM argues the absence of a bankruptcy provision indicates the right to repayment is not absolute.[84]

Thus, there remains a genuine dispute of material fact as to whether the Agreement is a usurious loan or sale of future receivables, because the parties dispute what the terms of reconciliation are, whether the Agreement specifies a finite term for repayment, and whether the Agreement requires Anadrill to make a weekly payment for a set dollar amount or for a percentage of the total amount Anadrill owes to RDM.[85] Based on the summary judgment evidence before the Court, this Court cannot conclude that RDM failed to make a showing sufficient to establish the existence of an element essential to its case that the Agreement was a sale rather than a loan.

Now that this Court has determined there is a genuine dispute of material fact as to whether the Agreement is for a sale or usurious loan, this Court will examine the Trustee's Claims and determine whether summary judgment can be granted for either the Trustee or RDM on any Claim.

### E. The Trustee and RDM's Motions for Summary Judgment

The Trustee moves for summary judgment, arguing that the Agreement was a fraudulent obligation, the transfers were fraudulent, the transferred funds should be recovered, and that the Trustee is entitled to pre-judgment interest and post-judgment interest.[86] RDM also moves for

---

[83] ECF No. 14, at 12.
[84] ECF No. 18, at 6.
[85] *See generally* ECF No. 14, 18.
[86] *See generally* ECF No. 14.

summary judgment, arguing that neither the Agreement nor transfers were fraudulent, and that the Trustee should not recover the funds Anadrill transferred to RDM.[87]

To state a claim for constructive fraudulent obligation or transfer under 11 U.S.C. § 548(a)(1)(B), the Trustee must plausibly allege that:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor that was made . . . within 2 years before the date of the filing of the petition, if . . . the debtor . . . made such transfer or incurred such obligation and . . . (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

Here, the parties dispute only whether Anadrill received reasonably equivalent value.[88] Accordingly, the Court's analysis will focus on that single, disputed element.

### 1.   Count 1 – The Trustee's Claim to Avoid a Constructively Fraudulent Obligation

Under New York law, loans that charge an interest rate exceeding 25% per annum are criminally usurious and void *ab initio*.[89] A contract that is void has no legal effect and creates no enforceable rights or obligations.[90]

Here, the Trustee argues that the interest rate of 39.20% was too high to be legal in New York, and thus the Agreement is void *ab initio* according to § 5-511.[91] Therefore, according to the Trustee, the obligation was fraudulent in that it did not provide reasonably equivalent value to Anadrill, due to the allegedly usurious interest rate.[92] RDM argues, however, that the Agreement does not charge interest at all, because it is a sale of future receivables, not a loan.[93]

---

[87] *See generally* ECF No. 17.
[88] *See generally* ECF No. 14, 17.
[89] *See Adar Bays, LLC*, 37 N.Y.3d at 325-26.
[90] *Id.*
[91] ECF No. 14, at 7-8; *In re Martinez Quality Painting & Drywall, Inc.*, No. 22-30357, 2025 WL 828882, at *8 (Bankr. W.D.N.C. Mar. 14, 2025); *see also Adar Bays, LLC*, 37 N.Y.3d at 333 (2021).
[92] ECF No. 14, at 7-8.
[93] ECF No. 18, at 5-9.

But, as explained *supra*,[94] there remains a genuine dispute of material fact as to whether the Agreement is a loan or sale of future receivables. Thus, based on the summary judgment evidence before the Court, this Court cannot conclude that RDM failed to make a showing sufficient to establish the existence of an element essential to its defense of Claim 1, which is that the Agreement is a sale of future receivables and provides reasonably equivalent value for the payments Anadrill made to RDM.

2. **Count 2 – The Trustee's Claim to Avoid a Constructively Fraudulent Transfer**

The Trustee alleges that because the contract between Anadrill and RDM was fraudulent, Anadrill's payment was made without receiving reasonably equivalent value.[95] Under New York law, loans that charge an interest rate exceeding 25% per annum are criminally usurious and void *ab initio*.[96] A contract that is void has no legal effect and creates no enforceable rights or obligations.[97]

Here, the Trustee alleges that the transfers were fraudulent because the Agreement imposed an annualized interest rate of 39.20%, which is higher than the criminal usury threshold of 25% under New York law.[98] The Trustee further alleges that the Agreement was not a true sale of receivables but rather a disguised loan with terms that ensured full repayment regardless of the debtor's revenue.[99] Therefore, the Trustee argues, the transfers Anadrill made to RDM in the amount of $429,000 were made pursuant to a criminally usurious contract and so there was no reasonably equivalent value bestowed on Anadrill.[100] But RDM argues that it did give Anadrill reasonably equivalent value because RDM gave Anadrill $582,000, and Anadrill only paid

---

[94] *See supra*, II.4.
[95] ECF No. 1, at 7-8.
[96] *See Adar Bays, LLC*, 37 N.Y.3d at 325-26.
[97] *Id.*
[98] ECF No. 1, at 3 (alleging 39.20% interest rate); *see also* N.Y. Penal Law § 190.40 (criminal usury threshold is 25%).
[99] ECF No. 1, at 3-4.
[100] ECF No. 1, at 6.

$429,000 back to RDM.[101] Thus, Anadrill made a profit of $153,000.[102] In response, the Trustee argues that those transfers cannot confer reasonably equivalent value because they were made pursuant to the Agreement, which the Trustee claims is a fraudulent *obligation*.[103] But as explained *supra*,[104] there remains a genuine dispute of material fact as to whether the Agreement is a loan or sale of future receivables. Thus, based on the summary judgment evidence before the Court, this Court cannot conclude that RDM failed to make a showing sufficient to establish the existence of an element essential to its defense of Claim 2, which is that the Agreement is a sale of future receivables and RDM provided reasonably equivalent value in exchange for Anadrill's transfer of $429,000 to RDM.

### 3. Count 3 – Recovery of Avoided Transfers Under § 550(a)(1)

The Trustee argues that the transfers of $429,000 from Anadrill to RDM should be recoverable because they were made pursuant to a void loan.[105] 11 U.S.C. § 550(a)(1) provides for recovery of avoided transfers. 11 U.S.C. § 550(d) limits the Trustee to only a single satisfaction of a recovered transfer.

Here, the Trustee argues that RDM was the initial transferee of avoidable transfers equaling $429,000, and so the transfers should be recovered pursuant to 11 U.S.C. § 550(a)(1).[106] But RDM argues that relief cannot be granted because the Trustee's claim relies on the Agreement being a loan, and, according to RDM, the Agreement is not a loan.[107]

---

[101] ECF No. 18, at 10.
[102] ECF No. 18, at 10.
[103] ECF No. 14, at 14-15.
[104] *See supra*, II.4.
[105] ECF No. 14, at 15.
[106] ECF No. 1, at 9.
[107] ECF No. 17, at 6-7.

RDM also argues that 11 U.S.C. § 550(d) prevents the Trustee from recovering because it limits the Trustee to a single satisfaction under section 550(a).[108] In other words, the estate must "only be returned to its pre-transfer position."[109] RDM argues that Anadrill received $582,000 from RDM and remitted only $429,000 to RDM prepetition, but the Trustee "seeks to 'recover' $429,000 from RDM, for a total windfall of $1,011,000 (or $582,000 plus $429,000)." But regardless of the amount the Trustee seeks to recover, there remains a genuine dispute of material fact as to whether the Agreement is a loan or sale of future receivables, as explained *supra*.[110] Thus, based on the summary judgment evidence before the Court, this Court cannot conclude that RDM failed to make a showing sufficient to establish the existence of an element essential to its defense of Claim 3, which is that the Agreement is a sale of future receivables and RDM already provided reasonably equivalent value in exchange for Anadrill's transfers to RDM of $429,000, therefore the Trustee is not entitled to collect anything from RDM.

### 4. Pre-Judgment Interest and Post-Judgment Interest

The Trustee requests pre-judgment and post-judgment interest on the alleged fraudulent transfers.[111] Pre-judgment interest "may be awarded in cases involving fraudulent transfers because it 'furthers the congressional policies of the Bankruptcy Code' and 'compensates the estate for the time it was without use of the transferred funds.'"[112] The Court also has the discretion to impose post-judgment interest.[113]

---

[108] ECF No. 17, at 9.
[109] ECF No. 17, at 9.
[110] See *supra*, II.4.
[111] ECF No. 14, at 16.
[112] *In re Supplement Spot, LLC*, 409 B.R. 187, 208 (Bankr. S.D. Tex. 2009) (quoting *In re Tex. Gen. Petroleum Corp.,* 52 F.3d 1330, 1339–40 (5th Cir.1995)).
[113] See *Williams v. Trader Pub. Co.,* 218 F.3d 481, 488 (5th Cir. 2000) (holding that, "[a] district court has discretion to impose a pre and post-judgment interest award to make a plaintiff whole").

Here, awarding pre-judgment and post-judgment interest would require a finding that any fraudulent obligations and transfers should be avoided, and that any preferential transfers should be clawed back.[114] But as explained *supra*,[115] there is a genuine dispute of material fact as to whether the Agreement constitutes a loan or sale. Therefore, at the Motion for Summary Judgment stage, this Court cannot determine whether the Agreement and transfers from Anadrill to RDM should be avoided and pre-judgment interest and post-judgment interest awarded. Thus, based on the summary judgment evidence before the Court, this Court cannot conclude that RDM failed to make a showing sufficient to establish the existence of an element essential to its defense which is that the Agreement is a sale of future receivables and provides reasonably equivalent value, thus there was no fraudulent transfer and the Trustee is not entitled to either pre-judgment interest or post-judgment interest.

Ultimately, this Court denies the Trustee's motion for summary judgment as to Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C. § 548(a)(1)(B); Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B); Count 3 – Recovery of Avoided Transfers under § 550(a)(1); and as to the Trustee's request for pre-judgment interest and post-judgment interest, because based on the summary judgment evidence before the Court, this Court cannot conclude that RDM failed to make a showing sufficient to establish the existence of an element essential to its defense, which is that the Agreement is a sale of future receivables and provides reasonably equivalent value for the payments Anadrill made to RDM.

Furthermore, this Court denies RDM's motion for summary judgment as to Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C. § 548(a)(1)(B); Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B); and Count 3 –

---

[114] See *In re Supplement Spot, LLC*, 409 B.R. at 208.
[115] See *supra*, II.4.

Recovery of Avoided Transfers under § 550(a)(1) because based on the summary judgment evidence before the Court, this Court cannot conclude that the Trustee failed to make a showing sufficient to establish the existence of an element essential to the Trustee's Claims

## II. CONCLUSION

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED Thursday, February 12, 2026**

_____
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**